IN THE MATTER OF THE ESTATE OF WILLIAM HADFIELD,
DECEASED.

Union County Court
Probate Division

Decided November 14, 1961.

*Mr. Michael G. Alenick* appeared *pro se* and as attorney for the heirs and next of kin of the deceased.

*Mr. James T. Kirk* argued the cause for Alec T. Pecoretti.

Wood, J. C. C.   This is an application, pursuant to order to show cause, to set aside a judgment of the surrogate granting letters of administration to Alec T. Pecoretti for the above estate and, in the latter's stead, to appoint applicant, Michael G. Alenick, as administrator.

The undisputed facts are substantially set forth in a petition filed for the order to show cause.   Incidentally, *R. R.* 5:3–5 provides for the issuance of an order to show cause in this type of case without complaint or petition. However, since the petition had been filed and since (as already stated) it contained most of the essential facts of the case, I denied a motion by Mr. Pecoretti's attorney to remove the petition from the record.   There being no dispute as to the facts, no testimony was taken.

The following is a summary of the essential facts.   William Hadfield, a resident of Elizabeth, New Jersey, died intestate on June 15, 1961.   His only heirs and next of kin were 13 sets of cousins, all residents of England. Michael G. Alenick, an attorney at law of this State (hereinafter called the applicant), represents these cousins.   At the time of the argument before this court he held powers

of attorney from 11 sets of these cousins authorizing his appointment as administrator; and he anticipated receiving similar powers of attorney from the other two sets. On August 9, 1961, before actually receiving any of the powers of attorney, applicant conferred with a probate clerk in the surrogate's office about his (the applicant's) appointment as administrator. He advised the clerk that he represented the heirs and that he anticipated receiving from them powers of attorney authorizing his appointment. He also filed with the clerk a telegram from two of the cousins stating that such powers of attorney were forthcoming. This conference was confirmed by letter of the same date addressed to the surrogate. In that letter the applicant urged that no one be appointed administrator pending receipt of the powers of attorney.

However, on August 10, 1961 the surrogate acknowledged the above letter and advised applicant that, because more than 40 days had elapsed since decedent's death and because there was before him no power of attorney or proof certain as to who the heirs were, he was on that date appointing Alec T. Pecoretti as administrator. The latter is also an attorney of this State, and he is presumably fully qualified to act as administrator of this estate. The only question is whether the action of the surrogate in appointing him was valid.

I am convinced that the above question must be answered in the negative. The surrogate apparently took the view that since the application on behalf of the heirs had not been formally presented within 40 days, he was empowered by *N. J. S.* 3A:6–4 to appoint any qualified person of his own choosing, regardless of the heirs' wishes. In that view he was mistaken.

The second paragraph of the above cited section of the law provides:

"If such intestate leaves no relations justly entitled to the administration of his personal estate, or if his next of kin shall not claim the administration within 40 days after the death of such intestate,

the superior court or surrogate's court may grant letters of administration to any fit person applying therefor."

The intent of the Legislature was to empower the surrogate, after 40 days, to appoint a stranger to the estate as administrator only if, *at the time of the appointment,* no claim had been made for administration by or on behalf of any relatives entitled thereto. At the time of this appointment there were relatives claiming the right to have their designee receive the appointment.

My determination as to the meaning of the above quoted language is supported by the first paragraph of the same section, which reads as follows:

"If any person dies intestate, administration of the personal estate of such intestate shall be granted to the surviving spouse of such intestate, if he or she will accept the same, and, if not, or if there be no such person, then to the next of kin of such intestate, or some of them, if they or any of them will accept the same, and, if none of them will accept the same, then to such other proper person as will accept the same."

This paragraph gives the specified relatives, if qualified, an absolute right to administration. *In re Alexandravicus',* 35 *N. J.* 230 (1961). There is nothing in the law to suggest that they lose this right if they do not apply for administration within the 40 days. They would lose this right if, but only if, they failed to make their claim known until after the surrogate has, after the lapse of the 40-day period, made a valid appointment of a stranger.

■ Furthermore, the conference of August 9, 1961 with the probate clerk, and the letter of the same date to the surrogate, created a dispute in the surrogate court within the meaning of *R. R.* 5:3-3(a)(4). This dispute deprived the surrogate of jurisdiction to make any appointment at all. *In re Alexandravicus, supra.* Accordingly, the action of the surrogate will be set aside.

As already indicated, the above mentioned relatives have a right to have a person of their own choosing receive the

appointment as administrator. By the above mentioned powers of attorney they have indicated their choice of the applicant. He will receive the appointment as soon as he files the powers of attorney and a proper bond.

Applicant may submit an order in conformity with this opinion.